# AFFIDAVIT OF SPECIAL AGENT CHRISTINA ROSEN IN SUPPORT OF AN APPLICATION FOR COMPLAINT

I, Christina Rosen, state:

## INTRODUCTION AND AGENT BACKGROUND

1. I am employed as a Special Agent with the United States Department of Labor, Office of Inspector General, Office of Investigations in Boston, Massachusetts. I have been employed by the United States government as a Special Agent since October 2007. I am a graduate of the Criminal Investigator Training Program of the Federal Law Enforcement Training Center in Glynco, Georgia, and have received extensive training in criminal investigation procedures and criminal law. In 2005, I graduated from Northeastern University with a Bachelor's degree in Criminal Justice. In 2006, I graduated from Boston University with a Master's degree in Criminal Justice. My responsibilities as a Special Agent with DOL-OIG-OI include investigating fraud, waste, and abuse of Department of Labor programs, employees, and departments. During my tenure as a Special Agent, I have conducted investigations of several types of criminal activity including work visa fraud, unemployment insurance fraud, false claims fraud, employee benefits fraud, identity theft, and money laundering. During the investigation of these cases, I have participated in the execution of search and arrest warrants and have seized evidence as evidence, fruit, or instrumentalities of violations of federal law.

2. I submit this affidavit in support of an application for a criminal complaint charging Alan Neal Scott ("SCOTT") with mail fraud, in violation of 18 U.S.C. § 1341, in connection with a scheme to defraud the Commonwealth of Massachusetts, Department of Unemployment Assistance ("DUA") though the submission of fraudulent unemployment insurance ("UI") claims. As described in detail below, SCOTT submitted these claims using his own identity as well as the identities of various individuals – including individuals who were not eligible for UI benefits as

they were incarcerated at the time of the claims and could not have been employed as reported. Moreover, the fraudulent claims all claimed former employment at a defunct and non-operational Massachusetts-based business also associated with SCOTT.

3. The facts in this affidavit come from my personal observations and review of records, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is probable cause for a criminal complaint and does not set forth all of my knowledge about this matter.

## OVERVIEW OF UNEMPLOYMENT INSURANCE BENEFITS CLAIMS

4. In the Commonwealth of Massachusetts, UI benefits are funded by the UI Trust Fund, which is comprised of monies obtained by state-imposed taxes on employers, and federal funds. The DUA administers the UI program.

5. For a claimant to be eligible to receive UI benefit payments from the UI Trust Fund, a claimant's Social Security Number ("SSN") needs to be reported by an employer to DUA in quarterly employment and wage detail reports. If a claimant applies for UI benefits and the identified employer has not submitted wage detail reports with the claimant's information, DUA sends a "Request for Wage Information" letter to the employer requesting that the employer provide the employee's wage information for each quarter the employee worked. If the employer sends in that information, then DUA will pay the UI benefits.

6. To apply for UI benefits, a claimant must first create an online account and provide their SSN, date of birth, mailing address, phone number, email address, name and address of former employer, reason for unemployed status, and dates of employment. As part of the process, a claimant must certify the accuracy of all information provided as part of the application.

7.   All initial UI claims payments are made in paper check form, which is mailed to the address listed by the claimant. After the initial payment is made, claimants can choose the manner in which they receive future payments, including by prepaid debit card or direct bank deposit.

## RELEVANT ENTITIES AND INDIVIDUALS

8.   SCOTT is a resident of Melrose, Massachusetts. In the late 1990's, SCOTT was convicted in the United States District Court for the District of Massachusetts in several separate cases involving bank fraud and tax fraud, among other things. According to an NCIC query, SCOTT was federally incarcerated from about May 3, 2000 to about July 1, 2011.

9.   Hamilton Burke and Associates Inc. ("HBA") was a Massachusetts debt consolidation company based in Stoughton, Massachusetts. According to records filed with the Secretary of the Commonwealth of Massachusetts, HBA was organized in May 2011, but involuntarily dissolved in June 2016.

## STATEMENT OF PROBABLE CAUSE

*Fraudulent UI Claims Filed By Purported Former HBA Employees*

10.   From on or about November 17, 2014 to April 29, 2018, DUA records show at least 20 people purportedly filed claims for UI benefits and claimed to have been formerly employed by HBA (the "HBA claims"). SCOTT was one of these 20.

11.   According to Department of Justice records, 14 of these 20 persons on whose behalf the HBA claims were submitted were incarcerated for all or part of the time that the claimants falsely reported that they were working for HBA.

12.   In fact, as set forth below, most of the checks for the HBA claims were sent to addresses connected to SCOTT and deposited in accounts controlled by SCOTT.

13.     Between on or about November 21, 2014 and April 16, 2018, DUA paid a total of $384,597 on these HBA claims.

*Initial Payments for 23 HBA Claims Went to SCOTT Accounts*

14.     From on or about November 13, 2014 to on or about April 29, 2018, 20 identities were used to file at least 27 fraudulent HBA UI claims (some claimants filed more than once). Of those 27 claims, the initial checks for 23 of them were mailed to addresses associated with SCOTT and deposited into bank accounts owned or controlled by SCOTT.

15.     The initial checks for 23 of the HBA claims for claimants were deposited into a Capital One bank 360 Checking account #xxxxx5514 in the name of "Alan N Scott" with an address of PO Box 2011, Taunton, MA (SCOTT ADDRESS 1) and an email of ascott.accts@gmail.com.

16.     Bank records for this Capital One account and other SCOTT accounts show that the funds deposited from these initial checks were often withdrawn shortly after deposit or moved to other accounts controlled SCOTT.

*SCOTT controlled accounts and addresses to which Subsequent Payments on HBA Claims Were Sent.*

17.     After the initial payments, DUA made subsequent UI payments on these HBA claims via a pre-paid debit card or direct deposit. 14 of the claimants' applications at DUA listed payment by debit cards as the preferred payment method for the claimants. Along with the initial debit card issuance, a onetime replacement debit card was issued to four claimants and one claimant was issued two replacement debit cards.

18.     As set forth below, the records I reviewed show that most of these debit cards were also sent to addresses controlled by SCOTT.

19. The following chart summarizes the checks and debit cards that were mailed, the addresses to which they were mailed, and how those addresses are connected to SCOTT:

| Address | # Initial Checks Mailed | # Debit Cards Mailed | Evidence of Connections to SCOTT |
|---|---|---|---|
| PO Box 2011 Taunton, MA (SCOTT ADDRESS 1) | 10 | 8 | Application for PO box listed SCOTT as contact and using email address: ascott00ma@gmail.com. Listed as SCOTT mailing address with MA RMV and in SCOTT's Capital One account |
| PO Box 990621 Boston, MA (SCOTT ADDRESS 2) | 2 | 0 | Application for PO box listed SCOTT as contact using email address asoctt00ma@gmail.com. |
| PO Box 230957 Boston, MA (SCOTT ADDRESS 3) | 1 | 2 | Application for PO box listed SCOTT as contact using email address asoctt00ma@gmail.com. |
| PO Box 245 Brockton, MA (SCOTT ADDRESS 4) | 0 | 2 | Application for PO box listed SCOTT as contact using email address asoctt00ma@gmail.com. |
| 21 Acorn Street Malden, MA (SCOTT ADDRESS 5) | 7 | 7 | Address of SCOTT nephew or friend Christian Buscemi,[1] which Buscemi and SCOTT provided to law enforcement as contact address for SCOTT. Address listed as residential address on Buscemi's US passport application, which also lists this address as SCOTT's address for emergency contact. |
| Oak Grove Ave. Addresses Melrose, MA (SCOTT ADDRESS 6)[2] | 3 | 1 | 2 Banks Pl, Unit 132, Mel, MA 02176 (SCOTT ADDRESS 8) is listed as SCOTT'S residence in law enforcement databases, SCOTT Verizon phone records and SCOTT statements to law enforcement. This address is part of the Windsor at Oak Grove property, which includes various addresses on Oak Grove Avenue. |
| 16 Island Hill Ave, Unit 211, Melrose, MA (SCOTT ADDRESS 7) | 1 | | SCOTT ADDRESS 8 is part of the Windsor at Oak Grove property, which includes addresses on Island Hill Avenue with the main office at 12 Island Hill Avenue. |

---

[1] In various Melrose Police reports, SCOTT refers to his relationship with Christian Buscemi as uncle and nephew. However, according to police reports there is no blood relationship between the two. These reports reflect that SCOTT told the police they had known each other a very long time, but are not related.

[2] The addresses for the three checks were: (1) 1 Oak Grove Ave, Unit 205, Melrose, MA, (2) 20 Oak Grove Ave, Unit 202, Melrose, MA, and (3) 20 Oak Grove Ave, Unit 215, Melrose, MA  The address for the debit card was 22 Oak Grove Ave, Unit 215, Melrose, MA.

*UI Fraud Example: J.B.*

20. From the second quarter of 2014 to the first quarter of 2015, HBA quarterly employment and wage detail reports filed with DUA claimed that a J.B. was employed by HBA at its Stoughton, MA address. However, J.B. has been incarcerated from April 2001 to the present. Incarcerated prisoners are not eligible for UI. The claim history is as follows:

21. On or about May 27, 2015, a UI claim for J.B based upon his purported loss of employment at HBA was filed with DUA.

22. On or about June 1, 2015, DUA approved the UI claim for J.B. and issued a paper check to J.B. for his/her first week of benefits. This check was mailed to SCOTT ADDRESS 1.

23. On or about June 4, 2015, J.B.'s initial DUA check was deposited into SCOTT's Capital One 360 Checking account #xxxxx5514.

24. On or about May 28, 2015, a Bank of America DUA debit card in the name of J.B. was mailed to SCOTT ADDRESS 1.

25. On or about February 11, 2017, J.B. filed another UI claim through the HBA account with DUA's online portal. Since HBA had not reported quarterly employment and wage detail reports to support J.B.'s claim, DUA sent HBA a "Request for Wage Information" letter and received a response purportedly from HBA listing wage information for J.B.

26. Upon receipt of the wage information from HBA for J.B., on or about February 16, 2017, DUA approved the UI claim for J.B, issued a paper check to J.B. and mailed it to SCOTT ADDRESS 1. Throughout this entire period, J.B. remained incarcerated in a federal prison.

*SCOTT UI Claims*

27.     According to DUA records, SCOTT filed two sets of UI claims, one beginning in or about November 2014 and one beginning in or about July 2017. Both listed HBA as his prior employer. Throughout these periods, in order to receive his UI benefits, SCOTT certified each week that he was willing and able to work.

28.     In connection with each of these claims, DUA contacted HBA electronically, and requested confirmation of reported wage earnings of SCOTT's employment due to the lack of previously reported earnings. According to DUA, HBA employee "Allison LaPlante" confirmed SCOTT's prior employment, wage earnings, and reason for unemployment status. There is no records of this Allison LaPlante in the Registry of Motor Vehicles, the Social Security Administration records or other law enforcement databases. Furthermore, there is no record with DUA of HBA reporting wage earnings for "Allison LaPlante." Furthermore, SSA has no record of SCOTT being employed by HBA.

29.     According to DUA records, HBA is listed with a mailing and physical address of 30 Newbury Street, Suite 300, Boston, MA. Based on an internet search, as well as surveillance conducted at this address, this is the location of OFICIO, a co-working/ shared office space.

30.     According to bank records from USAlliance, in a June 2016 loan application, SCOTT listed his employment, since January 2000, as "Manager-Legal Compli" for HBA with a gross income of $9,750/month.

31.     According to SCOTT's publicly available LinkedIn profile, SCOTT reports working as a paralegal/office manager for HBA from 2010-2013, and notes that he has been employed as an IT Manager for CBF International-Boston since 2010. According to the Secretary of the Commonwealth of Massachusetts, CBF International, Inc. was organized in 2010 and

7

involuntarily dissolved in 2016. The Commonwealth of Massachusetts has no record of any wages being reported by CBF International.

32. As noted above, however, according to an NCIC query, SCOTT was federally incarcerated from about May 3, 2000 to about July 1, 2011. Thus, SCOTT's employment history with HBA, as outlined in the above paragraphs, on the loan application and self-reported in SCOTT's LinkedIn profile is not accurate.

33. In fact, from in or about 1997 to 1999, SCOTT was convicted of fraud crimes in three separate cases in United States Federal District Court for the District of Massachusetts. The First Circuit, in its opinion on his appeal, also summarized his crimes as follows:

> In the 1990's and earlier, Alan Scott, a former paralegal handy with documents, apparently enhanced his income through an extensive array of white collar crimes using the identities of others. Those of his activities that took place in the late 1990's led to a series of indictments and three separate criminal cases against him, one case a year from 1997 to 1999; all three cases led to convictions.

*See United States v. Scott*, 270 F.3d 30, 33 (1st Cir. 2001). The First Circuit further described his crimes as follows:

> In a 1997 case, Scott pled guilty to bank fraud, 18 U.S.C. § 1344 (1994), and to making and possessing a forged check, 18 U.S.C. § 513(a) (1994). Scott took checks from a Boston law firm that had employed him as a legal assistant in 1995. . . .
>
> In a 1998 case, a jury convicted Scott of conspiring to make and of making false claims to an agency of the United States, 18 U.S.C. §§ 286, 287 (1994). Scott filed twenty false income tax returns with the IRS for the tax year 1996 seeking tax refunds in the names of at least twelve people. . . .
>
> In a 1999 case, Scott also pled guilty to an additional and different bank fraud, 18 U.S.C. § 1344, and to conspiring to commit that fraud, 18 U.S.C. § 371 (1994). The scheme involved fraudulently obtaining bank automobile loans.

*Id.*

34.     Although the First Circuit reversed the bank fraud convictions without prejudice because of a Speedy Trial Act violation, *id.*at 58, SCOTT reported to prison in or about May 2000 on the other charges.

*Additional Evidence Connecting Fraudulent UI Claims to SCOTT*

35.     An Internet Protocol (IP) address is a numerical label assigned to each device participating in a computer network that uses the Internet Protocol for communication. Computers on the Internet identify each other by an IP address. IP addresses can be matched to particular Internet service companies and those companies can typically identify the account that used the IP address to access the internet.

36.     The UI system tracks all activity associated with each registered account, and DUA maintains documentation of activity related to claimant and employer accounts. Included in those records are the IP addresses used by the computer that initiated activity on these account.

37.     From on or about March 8, 2015 to on or about August 3, 2018, logs maintained by DUA reflect that approximately 1,429 IP addresses were associated with activity of the 17 HBA claimant accounts, associated with the fraudulent UI claims identified above, as well as activity from the HBA employer account as follows:

| Claimant/Employer | # of IP Address |
|---|---|
| SCOTT | 103 |
| A.S. | 10 |
| D.S. | 123 |
| D.T. | 90 |
| D.M. | 109 |
| HBA | 200 |
| J.B. | 103 |
| J.W.B. | 89 |
| J.M. | 23 |
| L.V. | 11 |
| M.C. | 95 |
| P.D. | 92 |
| P.G. | 129 |
| R.A. | 113 |
| R.P | 23 |
| R.C. | 63 |
| S.B. | 9 |
| W.M. | 44 |

38. Through publicly available databases and other records as noted, these IP addresses were identified as belonging to various Internet Service Providers ("ISP") with connections to SCOTT during the relevant time periods as follows.

   a. IP addresses 71.126.255.160, 96.233.112.188 and 108.49.102.73:

      (1) Traced to Verizon Business, whose records identified the subscriber for that account as Alan Scott, 2 Banks Pl, Unit 132, Mel, MA 02176 (SCOTT ADDRESS 8) with email address ascott00ma@gmail.com., the same email address listed on all four PO Boxes identified above.

      (2) Between October 20, 2016 and April 16, 2018, logged five times and associated to activity on three 3 claimant accounts as well as the HBA employer account.

   b. IP address 173.14.185.169 (11/19/14-3/23/17):

      (1) Traced to Comcast Cable Communications, Inc. ("Comcast"). Comcast records identified the subscriber for that account as OFICIO LLC at 30 Newbury St., Fl. 3, Boston, MA 02116, the same address reported to DUA as the physical location of HBA.

  (2) Between November 19, 2014 and March 23, 2017, logged 37 times, of which 11 instances occur on the same day and, often at times, within minutes for multiple different UI accounts.

  (3) Associated to activity on eight different claimant accounts as well as the HBA employer account

 c. <u>76 IP addresses (129.10.107.127-155.33.231.90):</u>

  (1) Traced to Northeastern University[3], 360 Huntington Avenue, Boston, MA 02115. According to SCOTT's LinkedIn and Facebook accounts, SCOTT attended Northeastern University for his bachelors and master's degree. A Northeastern University ID for SCOTT was used when opening PO Box 245, Brockton, MA (SCOTT ADDRESS 4).

  (2) Between January 25, 2015 and April 5, 2018, logged 179 times, with 117 instances occurring on the same day and, often, within minutes, for multiple UI accounts.

  (3) Associated to activity on 15 claimant accounts as well as the HBA employer account.

39. In addition, a comparison of IP addresses captured by Facebook for activity on SCOTT's Facebook profile account with the IP addresses captured by DUA on claimant accounts discussed above, as well as the HBA DUA employer account, shows the same IP addresses were used for both activities, often within a fifteen minutes or half an hour of each other. This comparison demonstrated that on or about at least eighteen days between 2014 and 2018, the same IP address was used on the same day to both make claimant entries and to make Facebook entries on SCOTT's Facebook account, at times within an hour of each other. For example:

---

[3] According to publicly available databased, Northeastern University's IP address net range is 129.10.0.0 - 129.10.255.255.

    a.    On March 15, 2015 at 9:01:24 AM, DUA logged IP address 24.34.150.176 when claimant account for SCOTT was accessed to start and submit a claim for UI benefit for the week of March 14, 2015. Shortly thereafter, at 9:11:14 AM and 9:39:17 AM, DUA also logged the same IP address when claimant account for P.G. was accessed to start and submit a claim for UI benefit for the week of March 14, 2015. On the same day at 8:48:31 AM, Facebook logged IP address 24.34.150.176 for SCOTT's Facebook account to upload a photo.

    b.    On April 26, 2015, DUA logged IP address 70.193.212.218 when multiple claimant accounts were accessed: R.A. at 2:59:20 AM; J.W.B. at 8:37:20 AM; D.T. at 12:12:23 PM; and R.C. at 12:25:53 PM. The DUA claimant accounts for D.T., R.A. and P.G. were accessed to start and submit claims for UI benefit for the week of April 25, 2015. On the same day at 7:18:34 AM, 7:28:06 AM, and 10:19:08 AM, Facebook logged IP address 70.193.212.218 for SCOTT's Facebook account to upload three photos. On this date, both D.T. and R.C. were both federally incarcerated.

    c.    On December 25, 2017 at 6:08:12 AM, DUA logged IP address 174.199.15.16 when claimant account for D.T. was accessed. On the same day, less than ten minutes earlier, at 5:59:05 AM, Facebook logged IP address 174.199.15.16 for SCOTT's Facebook account to upload a photo. On this date, D.T. was incarcerated at Devens, FMC in Massachusetts.

    d.    On April 16, 2018 at 7:14:49 AM, DUA logged IP address 108.49.102.73 when claimant account for L.V. was accessed to update claimant information for mailing address to SCOTT ADDRESS 1. On the same day at 8:50:15 AM, 8:50:20 AM, and 8:51:38 AM, Facebook logged IP address 108.49.102.73 for SCOTT's Facebook account to send attachments. As noted above, SCOTT was the subscriber for this IP address. On this day, five (5) posts, with photos, were made to SCOTT's Facebook account timeline. On these posts SCOTT thanked five (5) different people for making donations to the GoFundMe page, https://www.gofundme.com/f/princesspatches, to help pay for SCOTT's alleged veterinarian bills for his dog.

## CONCLUSION

40.    Based on the information described above, I have probable cause to believe that that Alan Neal Scott has committed, among other potential crimes, mail fraud, in violation of 18 U.S.C. § 1341. Specifically, I have probable cause to believe that, on or about February 16, 2017, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money

and property by means of materially false and fraudulent pretenses, representations, and promises, did, for the purpose of executing and attempting to execute the scheme, knowingly cause to be delivered by mail and by any private and commercial interstate carrier according to the direction thereon, the a check from DUA to J.B. in the amount of $742.00.

Sworn to under the pains and penalties of perjury,

/s/ Christina Rosen DCC
Christina Rosen
Special Agent,
U.S. Department of Labor- OIG-OI

Subscribed and sworn to by telephone in accordance with Federal Rule of Criminal Procedure 4.1 this 24 day of July, 2020.

_____
Honorable Donald L. Cabell
United States Magistrate Judge